**Stephen Charles WIESENFELD, Individually and on behalf of all other persons similarly situated, Plaintiff,**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.**

Civ. A. No. 268–73.

United States District Court,
D. New Jersey.

Dec. 11, 1973.

Jane Z. Lifset, Bloomfield, N. J., Ruth Bader Ginsburg, New York City (N. Y. Bar), for plaintiff.

Herbert J. Stern, U. S. Atty., by Bernard S. Davis, Asst. U. S. Atty., T. Scott Johnstone, Dept. of Justice, Washington, D. C., for defendant.

## OPINION

Before HUNTER, Circuit Judge, and WHIPPLE and FISHER, District Judges.

CLARKSON S. FISHER, District Judge.

In this action plaintiff alleges that a federal statute, 42 U.S.C. Section

402(g),[1] denies him equal protection because only widows and not widowers may collect social security benefits under this section. Plaintiff seeks declaratory and injunctive relief. This three-judge court has been convened pursuant to 28 U.S.C. Sections 2282 and 2284 to decide whether Section 402(g) creates sexual discrimination in violation of the equal protection component of the Due Process Clause of the Fifth Amendment.[2]

Plaintiff moved for this suit to proceed as a class action pursuant to F.R. Civ.P. 23. Defendant moved to dissolve the court. Both parties have moved for summary judgment which seems appropriate because the material facts are not disputed.[3]

I

Plaintiff Stephen C. Wiesenfeld and Paula Wiesenfeld were married on November 15, 1970. Paula died in childbirth on June 5, 1972 leaving plaintiff with the responsibility for the care of his infant son, Jason.

During the seven years immediately preceding her death, Paula Wiesenfeld was employed as a school teacher in Ann Arbor, Michigan, White Plains, New York and Edison, New Jersey. At all times during her employment, maximum contributions were deducted from her salary and paid to Social Security. During their marriage, Paula Wiesenfeld's earnings exceeded that of her husband. In 1970, Paula earned $9808; Stephen earned $3100. In 1971 Paula earned $10,686; Stephen $2188. In 1972 Paula earned $6836; Stephen $2475. From January, 1969 until October 31, 1972 Stephen was employed by Eval-u-metrics, a consulting firm for computer services and industrial engineering. From February 5, 1973 until September 14, 1973 plaintiff was employed by Cyphernetics in Springfield, New Jersey as a technical consultant at a monthly salary of $1,500. On September 14, 1973 plaintiff was dismissed from this position and is unemployed at this time.[4] Plaintiff has obtained a Bachelor and a Master of Science degree in mathematics as well as a Master's degree in Business Administration.

In June, 1972 after his wife's death, plaintiff went to the Social Security Office in New Brunswick, New Jersey to apply for benefits. He obtained child's insurance benefits for his son under 42 U.S.C. Section 402(d). He was informed that he would not be entitled to

1. 42 U.S.C. Section 402(g) provides:

Mother's Insurance Benefits

(1) The widow and every surviving divorced mother . . . of an individual who dies a fully or currently insured individual, if such widow or surviving divorced mother—

(A) is not married,

(B) is not entitled to a widow's insurance benefit,

(C) is not entitled to old-age insurance benefits, or is entitled to old-age insurance benefits each of which is less than three-fourths of the primary insurance amount of such individual

(D) has filed application for mother's insurance benefits, or was entitled to wife's insurance benefits on the basis of the wages and self-employment income of such individual for the month preceding the month in which he died,

(E) at the time of filing such application has in her care a child of such individual entitled to a child's insurance benefit,
. . . shall . . . be entitled to a mother's insurance benefit . . . .

(2) Such mother's insurance benefit for each month shall be equal to three-fourths of the primary insurance amount of such individual
. . .

2. "(W)hile the Fifth Amendment contains no equal protection clause it does forbid discrimination that is 'so unjustifiable as to be violative of due process.'" Schneider v. Rusk, 377 U.S. 163, 168, 84 S.Ct. 1187, 1191, 12 L.Ed.2d 218 (1964); see also Frontiero v. Richardson, 411 U.S. 677, 680 n. 5, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); U. S. Dept. of Agriculture v. Moreno, 413 U.S. 528, 2825 n. 5, 93 S.Ct. 2821, 37 L.Ed.2d 782 (June 25, 1973); Shapiro v. Thompson, 394 U.S. 618, 641–642, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

3. Transcript of Oral Argument, June 20, 1973 at 45.

4. Affidavit of plaintiff filed on October 2, 1973 at 1, paragraph 2.

any benefits under Section 402(g) because such benefits were payable only to women.[5] From June to September 1972, plaintiff received $206.90 per month on behalf of his son as child's insurance benefits. From October, 1972 to the present, these benefits have been $248.30 per month. Plaintiff did not seek any further relief from the Social Security Administrators. Indeed, as the defendant has stipulated,[6] it would have been futile for plaintiff to pursue any administrative remedy because Section 402(g) on its face granted benefits only to widows, thereby excluding men. Plaintiff then filed this suit on February 24, 1973.

## II

Even though defendant has stipulated that appeal through the administrative process would be futile, which eliminates 42 U.S.C. Section 405(h)[7] as a bar to this action, the defendant contends that no jurisdictional basis has been established by plaintiff. Plaintiff suggests two jurisdictional alternatives, 28 U.S.C. Section 1331 and 42 U.S.C. Section 405(g).

Section 1331 requires an amount of at least $10,000 to be in controversy. Defendant contends that plaintiff's claim fails to meet this jurisdictional amount. The burden is upon the plaintiff to establish by a preponderance of the evidence that his claims exceed $10,000. Kvos, Inc. v. Associated Press, 299 U.S. 269, 277–278, 57 S.Ct.

197, 81 L.Ed. 183 (1936); Davis v. Shultz, 453 F.2d 497, 501 (3d Cir. 1971); Opelika Nursing Home, Inc. v. Richardson, 448 F.2d 658, 666 (5th Cir. 1971). If it appears to a legal certainty that plaintiff cannot recover the jurisdictional amount, the case must be dismissed. Plaintiff must prove that the legal impossibility of recovering $10,000 is not so certain as to negative his good faith in asserting the claim. *Davis, supra* at 501 and cases cited therein. The amount in controversy is measured as of the time when the action was filed. Smith v. Maryland Casualty Co., 292 F. Supp. 358, 359 (E.D.La.1968). Events which occur subsequent to filing which reduce the amount recoverable below the statutory limit do not oust jurisdiction. St. Paul Indemnity Co. v. Red Cab Company, 303 U.S. 283, 288–290, 58 S.Ct. 586, 82 L.Ed. 845 (1939); Wade v. Rogala, 270 F.2d 280, 284 (3d Cir. 1959).

The complaint in this suit was filed on February 24, 1973. According to plaintiff's testimony at his deposition, he began employment at Cyphernetics on February 5, 1973 at a salary of $1,500 per month. Plaintiff, then, even if the statute in question permitted men to receive benefits, would have been precluded from receiving *any* benefits by virtue of his employment under the other applicable statutes regulating the amounts of payments.[8] It is also evident that any possible benefits for the period from June 5, 1972 to February 5, 1973 would not even approach $10,000.[9]

---

5. Defendant has supplied an affidavit to the effect that the Social Security Officials in New Brunswick have no written records nor recollection of plaintiff's request for benefits under Section 402(g). Defendant does not now dispute plaintiff's allegations that the application for such benefits was made orally and denied orally.

6. Transcript of Oral Argument, June 20, 1973 at 16–17.

7. 42 U.S.C. Section 405(h) provides:
The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the

United States, the Secretary, or any officer or employee thereof shall be brought under Section 41 of Title 28 to recover on any claim arising under this subchapter. Even if the defendant had not stipulated, Section 405(h) would not bar plaintiff's action. Gainville v. Richardson, 319 F.Supp. 16, 18 (D.Mass.1970); Williams v. Richardson, 347 F.Supp. 544 (W.D.N.C.1972); *see also* Richardson v. Morris, 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973) (per curiam); Griffin v. Richardson, 346 F.Supp. 1226, 1230 (D.Md.1972), aff'd, 409 U.S. 1069, 93 S.Ct. 689, 34 L.Ed.2d 660 (1972).

8. 42 U.S.C. Section 403(b) and (f).

9. The amount would be $2058.00 based upon a period of eight months at $275.25 per month.

■ If restricted to an analysis as of the day when this complaint was filed, defendant raises a strong argument for dismissal. Plaintiff suggests that it cannot be shown to a legal certainty that his claim is not worth $10,000 because he could have chosen to remain at home or he could have lost his job. Defendant replies that these options are mere speculation which cannot support federal question jurisdiction because a determination of the value of plaintiff's rights at the time of suit may not be based upon future or contingent events which are possible but not probable.[10]

■ It would be a futile act for us to dismiss the complaint for lack of jurisdiction on the ground that the possibility of plaintiff losing his job was too speculative when apparently he is now unemployed.[11] Even if this Court were to accept defendant's arguments to dismiss the complaint based upon a consideration of the probabilities on February 24, such a dismissal might not prevent plaintiff from immediately filing another suit presenting the same claims. Given these circumstances dismissal upon these grounds would be no more than an empty formality which we decline to pursue.

Jurisdiction may be established under Section 1331 if the value of the right which plaintiff seeks to protect exceeds $10,000. *See generally*, C. Wright, Law of the Federal Courts, Sec. 34 (2d ed. 1970); 1 J. Moore, Federal Practice, Para. 0.96 (2d ed. 1964). The allegation that a Congressional statute which provides certain monetary benefits to some classes of persons and not others in violation of the Fifth Amendment has been found sufficient to satisfy the requirements of Section 1331 even in the Social Security context. Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L. Ed.2d 583 (1973); Williams v. Richardson, 347 F.Supp. 544, 548 (W.D.N.C. 1972). Both *Frontiero* and *Williams* imply that plaintiff need not wait until enough months have passed so that the total amount of the monthly benefits which might be received if plaintiff successfully demonstrates that he has been unconstitutionally excluded exceeds $10,000. *cf.* White v. Bloomberg, 345 F.Supp. 133, 141 (D.Md.1972). Accordingly, we are satisfied that the amount in controversy exceeds $10,000 and jurisdiction is properly established under Section 1331.

Because we find jurisdiction under Section 1331, we need not and do not pass upon the applicability of 42 U.S.C. Section 405(g) which plaintiff suggests as a jurisdictional alternative.[12]

■ Plaintiff has also moved for this suit to proceed as a class action on behalf of all widowers who have in their care a child of an insured individual entitled to federal social security child benefits and who are excluded from benefits for themselves solely because they are men. However, plaintiff admits that this request is merely a safeguard against mootness so that if, for some reason, this plaintiff were unable to continue the suit, the constitutional attack on Section 402(g) could still be litigated.[13] We find this reason as in-

---

10. *Cf.* Ammex Warehouse Co. v. Dept. of Alcoholic Bev. Control, 224 F.Supp. 546, 551 (S.D.Cal.1963), aff'd, 378 U.S. 124, 84 S.Ct. 1657, 12 L.Ed.2d 743 (1964); Cardinal Sporting Goods Company v. Eagleton, 213 F.Supp. 207, 212 (E.D.Mo.1963), vacated as moot, 374 U.S. 496, 83 S.Ct. 1866, 10 L.Ed. 2d 1043 (1963); Kheel v. Port of New York Authority, 457 F.2d 46, 49 (2d Cir. 1972), cert. denied 409 U.S. 983, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972).

11. Affidavit of plaintiff filed on October 2, 1973 at 1, paragraph 2.

12. In addition to finding Section 1331 jurisdiction the court also relies upon Section 405(g) for jurisdiction to review a constitutional challenge on equal protection grounds to 42 U.S.C. Secs. 403(a) and 416(h)(3) in Williams v. Richardson, 347 F.Supp. 544, 548 (W.D.N.C.1972). In Jimenez v. Richardson, 353 F.Supp. 1356, 1358 (N.D.Ill. 1973) the court considered a constitutional attack upon sections of the Social Security Act under Section 405(g), but without any discussion of the jurisdictional issue.

13. Transcript of Oral Argument, June 20, 1973 at 41–42.

sufficient to sustain this litigation as a class action, and therefore plaintiff's motion for this matter to proceed as a class action is denied.

## III

■ The threshold issue is what constitutional standard of review should be applied to test the validity of Section 402(g) which denies benefits on the basis of sex. The Supreme Court has utilized two equal protection tests. If a statute is based upon an "inherently suspect" classification such as race,[14] alienage,[15] or national origin,[16] or it concerns a "fundamental interest" such as the right to vote,[17] the right to appeal a criminal conviction,[18] or the right to interstate travel,[19] it is subject to strict or "close judicial scrutiny" and will be held invalid in the absence of a countervailing "compelling" governmental interest. In all other circumstances, under the "traditional" equal protection standard a legislative classification must be upheld unless it is "patently arbitrary" and bears no "rational relationship" to a legitimate governmental interest. *See,* Jefferson v. Hackney, 406 U.S. 535, 546, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); McGowan v. Maryland, 366 U.

S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *See generally* Developments in the Law: Equal Protection, 82 Harv.L. Rev. 1065 (1969).

When confronted with legislative classifications based upon sex, the majority of the Supreme Court has declined to add sex to the list of inherently suspect classifications even though some courts [20] and commentators [21] have concluded otherwise. *Frontiero, supra;* Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).

In *Frontiero* the Supreme Court declared unconstitutional certain federal statutes which provided, solely for administrative convenience, that spouses of male members of the armed services are dependents for the purposes of obtaining increased quarters allowances and medical and dental benefits, but that spouses of female members are not considered dependents unless they are dependent for more than one-half of their support. Mr. Justice Brennan, joined by Justices Douglas, White and Marshall, concluded that because sex is an inherently suspect classification, these statutes could not be valid under "close judicial scrutiny". Mr. Justice Powell, joined by the Chief Justice and Justice Blackmun, found these statutes unconstitutional in light of *Reed,* but specifically noted that it would be inappropriate to decide whether sex is a suspect classifi-

14. *See* Loving v. Virginia, 388 U.S. 1, 11, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); McLaughlin v. Florida, 379 U.S. 184, 191–192, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

15. *See* Graham v. Richardson, 403 U.S. 365, 372, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); Sugarman v. Dougall, 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (June 25, 1973) (No. 71–1222); In re Griffiths, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (June 25, 1973).

16. *See* Oyama v. California, 332 U.S. 633, 644–646, 68 S.Ct. 269, 92 L.Ed. 249 (1948); Korematsu v. United States, 323 U.S. 214, 216, 65 S.Ct. 193, 89 L.Ed. 194 (1944); Hirabayaski v. United States, 320 U.S. 81, 100, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943).

17. *See* Dunn v. Blumstein, 405 U.S. 330, 336–337, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

18. *See* Griffin v. Illinois, 351 U.S. 12, 76 S. Ct. 585, 100 L.Ed. 891 (1956).

19. *See* Shapiro v. Thompson, 394 U.S. 618, 629–630, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

20. *E. g.,* United States ex rel. Robinson v. York, 281 F.Supp. 8, 14 (D.Conn.1968); Sail'er Inn, Inc. v. Kirby, 5 Cal.3d 1, 95 Cal.Rptr. 329, 339–341, 485 P.2d 529, 539–541 (1971).

21. *E. g.,* Note, Sex Discrimination and Equal Protection: Do We Need a Constitutional Amendment?, 84 Harv.L.Rev. 1499, 1507–1508 (1971); Note, 1972 Wisc.L.Rev. 626, 632–633; Note, 86 Harv.L.Rev. 568, 583–88 (1973).

cation because the Equal Rights Amendment has been submitted to the States for ratification. 411 U.S. at 691–692, 93 S.Ct. 1764, Mr. Justice Stewart determined that these statutes worked an invidious discrimination in violation of constitutional principles established in *Reed.* 411 U.S. at 691, 93 S.Ct. 1764.

 While a decision by a divided Court is as final on all issues of the case as a decision by a unanimous court[22] the reasoning employed by a plurality does not become law. *Frontiero* demonstrates that a majority of the Supreme Court has not yet classified sex as "inherently suspect".

Subsequent to *Frontiero* and *Reed,*[23] some courts and commentator have interpreted these two cases as creating an "intermediate test" for legislative discrimination based upon sex. Eslinger v. Thomas, 476 F.2d 225, 231 (4th Cir. 1972); Wark v. Robbins, 458 F.2d 1295, 1297 n. 4 (1st Cir. 1972) (dictum); *see generally* Gunther, The Supreme Court 1971 Term—Forward: In Search of Evolving Doctrine on a Changing Court, 86 Harv.L.Rev. 1 (1972); Getman, The Emerging Constitutional Principle of Sexual Equality, The Supreme Court Review 157 (1972). Others view this "new test" as a "slightly altered" rational basis standard or as "general shift" from the traditional test to a "slightly, but perceptibly, more rigorous" standard. Green v. Waterford Board of Education, 473 F.2d 629, 633 (2d Cir. 1973); Aiello v. Hansen, 359 F.Supp. 792, 796 (N.D.Cal.1973); Brenden v. Independent School District 742, 477 F.2d 1292, 1300 (8th Cir. 1973).

Apparently this "new test" developed from the language of Chief Justice Burger in *Reed* when, for a unanimous Court he quoted Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920) that

"(a) classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' "

404 U.S. at 76, 92 S.Ct. at 254.

*Royster Guano Co.* can hardly be considered as a strong foundation for a "new" equal protection standard. In that case a successful attack was made upon a Virginia statute which taxed all income of local corporations derived from business done outside Virginia and business done within it while exempting entirely the income derived from outside Virginia by local corporations which do no local business. It is evident that *Royster Guano Co.* depended upon the "traditional" equal protection standard which evolved during that era of the Supreme Court's history when governmental economic regulations were constantly challenged on equal protection grounds.

In *Reed* and *Frontiero* we do not discern a "general shift" of standards nor the establishment of a "new intermediate" equal protection test, and we reject those cases which adopt such standards. We do, however, perceive an expression of deep concern by the Supreme Court to analyze statutory classifications based upon sex in more pragmatic terms of this everyday modern world rather than in the stereotyped generalizations of the Victorian age. At best, all that can be gleaned from *Reed* and *Frontiero* is that until the Supreme Court is faced squarely with the problem of extending *Reed* in a case where a sexual classification could be validly upheld under the "traditional" test but not under "close judicial scrutiny", we cannot be absolutely certain how statutory sex discrimination fits within equal protection doctrine. Up to this time only four members of

---

22. Kaku Nagano v. Brownell, 212 F.2d 262, 264 (7th Cir. 1954).

23. In *Reed* the Supreme Court found a mandatory provision of the Idaho probate code giving preference to men over women when persons of the same entitlement class apply for appointment as an administrator of a decedent's estate violative of the Equal Protection Clause of the Fourteenth Amendment. 404 U.S. at 76–77, 92 S.Ct. 251.

the Court have been willing to hold that sex is a suspect classification.

 The obvious reluctance of the Supreme Court to decide whether or not to categorize sex as "inherently suspect" apparently originates from an unwillingness to intrude into that area while the Equal Rights Amendment is pending ratification by the States. It also arises from the principle that if a statute violates equal protection doctrine under a lesser standard, there is no need to examine that classification by "close judicial scrutiny". *Aiello, supra* 359 F. Supp. at 796; *see also* Eisenstadt v. Baird, 405 U.S. 438, 447 n. 7, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). Consequently, we must first proceed to an analysis of whether Section 402(g) is rationally related to some valid public purpose.

## IV

Both plaintiff and defendant raise compelling arguments in support of their positions under the "traditional" equal protection standard.

Plaintiff argues that Section 402(g) was enacted in 1939 as Section 202(e) of the Social Security Act "to provide a systematic program of protection against economic and social hazards". Plaintiff contends that these 1939 amendments were "designed to afford more adequate protection to the family as a unit". H.R.Rep.No.728, 76th Cong. 1st Sess. 7 (1939); *see* S.Rep.No.734, 76th Cong. 1st Sess. 8–9 (1939); Speech of Rep. Cooper, 84 Cong.Rec. 6896 (1939). Section 402(g), although paying benefits directly to a widow, was primarily intended for the protection of the children of a deceased wage earner. The widowed mother received the benefits not because she was female, but because it was assumed that she would prefer to remain at home to care for the children.[24] Because the congressional purpose of Section 402(g) was to provide for the *families* of deceased wage earners, plaintiff argues that the arbitrary congressional choice of the female as the conduit for such benefits to the family violates equal protection as did the choice by the Idaho legislature to prefer men as administrators of estates.

 Plaintiff adds that not only does this arbitrary choice deny men equal protection, but it also denies equal protection to female wage earners such as Paula Wiesenfeld who are the principal breadwinners for their families.[25] Plaintiff argues that Section 402(g) invidiously discriminates against women wage earners when tragic events remove them from their families. In circumstances such as those in the instant case, this statute may deprive a surviving child of full time care by his only remaining natural parent. Thus, because of the manner in which Section 402(g) arbitrarily operates to discriminate against men, women wage earners and children who have lost their mothers, plaintiff concludes that this statutory provision of Congress violates equal protection under the "traditional" standard.

Defendant responds that Section 402(g) is rationally related to a valid public purpose which is to rectify the effects of past discrimination against women. Because of finite limits on the public treasury, Congress must pick and choose among competing classes of persons who shall receive benefits under social welfare programs. So long as that choice is rationally related to a valid public purpose, congressional wisdom will not be disturbed in allocating the nation's financial resources in pursuit of its social welfare goals. *cf.* Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L. Ed.2d 231 (1971).

---

24. Final Report of the Advisory Council on Social Security 31 (1938).

25. It is evident that the doctrine of *jus tertii* should not prevent plaintiff Stephen from asserting the constitutional rights of his wife Paula because no other plaintiff could present a claim similar to hers in a case ripe for adjudication under Section 402(g).

Even though Congress has clearly expressed that discrimination based upon sex shall be unlawful,[26] women have been and continue to be unable to earn incomes comparable to those of men.[27] Consequently, according to defendant, there is no constitutional defect in the decision to provide only women with benefits because it has been and continues to be more difficult for families who suffer the loss of their husband-father to replace the loss of the income which he provided. Gruenwald v. Gardner, 390 F.2d 591 (2d Cir. 1968), cert. denied, 393 U.S. 982, 89 S.Ct. 456, 21 L.Ed. 2d 445 (1968); McEvoy v. Weinberger, F.Supp. (S.D.Fla. No. 72–1727 Civ. JE, August 28, 1973); compare Shevin v. Kahn, 273 So.2d 72 (Fla.1972), probable jurisdiction noted —— U.S. ——, 94 S.Ct. 283, 38 L.Ed.2d 216 (U.S. Oct. 23, 1973) (No. 73–78). (Florida statute providing a $500 property tax exemption to widows only held not violative of equal protection). Defendant also points out that *Gruenwald* is cited with apparent approval in the opinion of Mr. Justice Brennan in *Frontiero*,[28] and therefore remains valid precedent in support of defendant's claim that because Section 402(g) is designed to rectify the effects of discrimination against women, it does not violate equal protection standards.

■■■ It is often difficult for courts to determine the specific purpose behind congressional legislation especially where, as here, the legislative history is subject to different interpretations and demonstrates that perhaps Congress had more than one purpose in creating this statute. However, under the "traditional" test, we need only find that the statute in question is rationally related to *some* valid public purpose.

When this standard is applied to Section 402(g), we find that this measure is a rational attempt by Congress to protect women and families who have lost the male head of the household. This choice by Congress is not arbitrary because it is very evident that women have been and continue to be unable to earn income equal to that of men even though Congress has clearly indicated that job discrimination on the basis of sex shall be unlawful.

V

■■■ Having determined that Section 402(g) satisfies the "traditional" equal protection standard, we must determine whether the test of "close judicial scrutiny" should be applied and whether sex should be declared as "inherently suspect". We are persuaded by the opinion of Mr. Justice Brennan in *Frontiero* that sex is "inherently suspect". When the higher standard is applied to Section 402(g), that section violates the equal protection component of the Fifth Amendment.

We agree that

"since sex, like race and national origin, is an immutable characteristic determined solely by the accident of birth, the imposition of special disabilities upon the members of their sex would seem to violate 'the basic con-

---

**26.** *See, e. g.,* 42 U.S.C. Secs. 2000e–2(a), (b), (c); *see generally,* Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109 (1971); *See, e. g.,* 29 U. S.C. Sec. 206(d); *see generally,* Murphy, Female Wage Discrimination: A study of the Equal Pay Act 1963–1970, 39 U.Cin.L. Rev. 615 (1970); *see also,* H.R.J.Res.No. 208, 92d Cong., 2d Sess. (1972); 5 U.S.C. Sec. 2108, as amended, 85 Stat. 644; 5 U.S. C. Sec. 7152, as amended 85 Stat. 644; 5 U.S.C. Sec. 8341, as amended, 84 Stat. 1961; 38 U.S.C. Sec. 102(b), as amended, 86 Stat. 1092.

**27.** In 1971 the median husband's earnings were $8,858 while only $3,325 for wives. Bureau of Census, Current Population Reports, Series P–60 No. 85, "Money Income in 1971 of Families and Persons in the United States", Table 31. In 1970 the median annual earnings of all female workers with taxable earnings was $2,734 while $6,133 for men. U.S.Dept. of H.E.W., Social Security Bull., Annual Statistical Supp., 1970, Table 34 at 50.

**28.** 411 U.S. at 689 n. 22, 93 S.Ct. 1764.

cept of our system that legal burdens should bear some relationship to individual responsibility . . . .' And what differentiates sex from such non-suspect statutes as intelligence or physical disability, and aligns it with the recognized suspect criteria, is that the sex characteristic frequently bears no relation to the ability to perform or contribute to society. As a result, statutory distinctions between the sexes often have the effect of invidiously relegating the entire class of females to inferior legal status without regard to the actual capabilities of its individual members." 411 U.S. at 686–687, 93 S.Ct. at 1770.

When Section 402(g) is applied to the facts of this case and viewed under "close judicial scrutiny", even though Congress may have intended that this section rectify the effects of past and present discrimination against women, it operates to "heap on" additional economic disadvantages to women wage earners such as Paula Wiesenfeld. *Frontiero supra*, at 689 n. 22, 93 S.Ct. 1764. During her employment as a teacher, maximum social security payments were deducted from her salary. Yet, upon her tragic death, her surviving spouse and child receive less social security benefits than those of a male teacher who earned the same salary and made the same social security payments.

While affirmative legislative or executive action may satisfy a compelling governmental interest to undue the past discrimination against such suspect groups as racial minorities,[29] such action cannot meet the higher equal protection standard if it discriminates against some of the group which it is designed to protect. Because Section 402(g) discriminates against women such as Paula Wiesenfeld who have successfully gained employment as well as against men and children who have lost their wives and mothers, we find this section violates the Fifth Amendment.

For these reasons we grant summary judgment for the plaintiff. Counsel, with notice, shall submit an order in accordance with this opinion declaring Section 402(g) unconstitutional insofar as it discriminates against widowers on the basis of sex, enjoining defendant from denying benefits under Section 402(g) to widowers solely on the basis of sex and directing the defendant to make payments to the plaintiff for such periods during which he would have been qualified to receive benefits but for Section 402(g) herein held unconstitutional. *Cf.* Griffin v. Richardson, 346 F.Supp. 1226, 1237 (D.Md.1972), aff'd. 409 U.S. 1069, 93 S.Ct. 689, 34 L.Ed.2d 660 (1972); Davis v. Richardson, 342 F.Supp. 588, 593 (D.Conn.1972), aff'd. 409 U.S. 1069, 93 S.Ct. 678, 34 L.Ed.2d 659 (1972). Such order shall be stayed for ninety days to allow an appeal by either party.

The foregoing opinion shall constitute the court's findings of fact and conclusions of law under F.R.Civ.P. 52(a).

---

29. *See, e. g.*, Contractors Ass'n of Eastern Pa. v. Secretary of Labor, 442 F.2d 159, 176–177 (3d Cir. 1971), cert. denied, 404 U.S. 854, 92 S.Ct. 98, 30 L.Ed.2d 95 (1971); Joyce v. McCrane, 320 F.Supp. 1284, 1291–1293 (D.N.J.1970); Carter v. Gallagher, 452 F.2d 315 (8th Cir. 1971) (en banc), cert. denied, 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972); United States v. Ironworkers Local 86, 443 F.2d 544 (9th Cir. 1971), cert. denied, 404 U.S. 984, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971); United States v. Wood, Wire & Metal Lathers Int. U., L. U., 341 F.Supp. 694, 699 (S.D.N.Y.1972), aff'd, 471 F.2d 408, 413 (2d Cir. 1973), cert. denied, 412 U.S. 939, 93 S.Ct. 2773, 37 L.Ed.2d 398 (1973); Southern Illinois Builders Association v. Ogilvie, 471 F.2d 680, 685–686 (7th Cir. 1972); United States v. Local Union No. 212, 472 F.2d 634, 636 (6th Cir. 1973).