Charles Everett **WILLIAMS** and Teresa Jean Williams, by their mother and next friend, Mae Helen Livingston, et al., Plaintiff,

v.

Elliot L. **RICHARDSON,** Secretary, United States Department of Health, Education and Welfare, Defendant.

No. 2712.

United States District Court, W. D. North Carolina, Charlotte Division.

Aug. 11, 1972.

Gail F. Barber, Thomas W. Pulliam, Jr., Thomas H. Wyche, Shelley Blum,

Donald A. Gillespie, Jr., Marvin B. House and James A. Long, IV., Legal Aid Society of Mecklenburg County, Charlotte, N. C., for plaintiffs.

Keith S. Snyder, U. S. Atty., Asheville, N. C., David B. Sentelle, Asst. U. S. Atty., Charlotte, N. C., Paul Merlin, Chief of Litigation, and Sarah L. Kemble, Atty., Social Security Div., Dept. of HEW, Washington, D. C., for defendant.

Before CRAVEN, Circuit Judge, WOODROW W. JONES, Chief District Judge, and McMILLAN, District Judge.

## MEMORANDUM OF DECISION

McMILLAN, District Judge:

This case was heard before a three-judge court in Charlotte, North Carolina. The facts are not in dispute, and they appear from the pleadings and from affidavit of Hugh F. McKenna, Director of the Bureau of Retirement and Survivors Insurance of the Social Security Administration.

Charles Edward Williams and Teresa Jean Williams are natural children of Charles E. Williams, now deceased, and of their mother and next friend, Mae Helen Livingston. They bring this suit as a class action for themselves and other illegitimate children similarly situated, to enjoin the defendant Secretary of the United States Department of Health, Education and Welfare from enforcing Title 42 U.S.C., §§ 403(a) and 416(h) (3) so as to deny them participation in their father's Social Security survivors' benefits. Plaintiffs contend that the statutory discrimination against certain illegitimate children in the distribution of Social Security benefits is a violation of their rights under the Fifth Amendment to due process and equal protection of laws.

Charles E. Williams was a wage earner, covered under Social Security, who died domiciled in Baltimore, Maryland, in August, 1969. He was legally married to Edna Williams, and left two legitimate minor children, Zerita and Emily Williams, children of Edna Williams.

At the time of his death, however, Charles E. Williams was not living with his lawful wife, but was living with Mae Helen Livingston, now a resident of Charlotte, North Carolina, mother of the plaintiffs. The plaintiffs were born out of wedlock to Mae Helen Livingston while their father was lawfully married to Edna Williams, and the plaintiffs therefore are illegitimate children.

The relevant Social Security statutes are not simple in their wording, though they are essentially simple in the results they would accomplish:

42 U.S.C. § 402(d) provides benefits for any child of the wage earner.

42 U.S.C. § 416(h)(2)(A) defines "child" in terms of state law, and incorporates state law into the federal Act, as follows:

"In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death . . . ."

Under Maryland (or North Carolina) law, plaintiffs are not entitled to inherit personal property and, therefore, can not meet the § 416(h)(2)(A) definition of "child."

Notwithstanding 42 U.S.C. § 416(h) (2)(A), an applicant is deemed a child under § 416(h)(2)(B) if the parents had gone through a marriage ceremony which was legally defective. Plaintiffs do not qualify under (B), because there had been no such ceremony.

In addition even a clearly illegitimate child is deemed a "child" under § 416(h) (3)(C) if:

"(i) such insured individual

(I) had acknowledged in writing that the applicant is his son or daughter,

(II) had been decreed by a court to be the father of the applicant, or

(III) had been ordered by a court to contribute to the support of the applicant because the applicant was his son or daughter,

and such acknowledgment, court decree, or court order was made before the death of such insured individual, or

(ii) such insured individual is shown by evidence satisfactory to the Secretary to have been the father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died."

Under § 416(h)(3)(C), nothing further appearing, plaintiffs, though illegitimate, share the statutory death benefits because they are shown by evidence satisfactory to the Secretary to be natural children of the wage earner and because he was living with them and contributing to their support when he died.

The unfairness of which the plaintiffs complain arises from 42 U.S.C. § 403(a), dealing with apportionment of benefits in case individual benefits have to be reduced because of the "family maximum." A wage earner's account under the statute will only support a maximum total of survivors' benefits. Until the family maximum is exceeded, each dependent, including each § 416(h)(3) "child," is entitled to a fixed dollar amount of benefits. If the total number of dependents is so large that the individual payments would exceed the family maximum, § 403(a) provides for a proportionate reduction in benefits. However (and this is what plaintiffs complain about)

". . . if such total of benefits for such month includes any benefit or benefits under section 402(d) of this title *which are payable solely by reason of section 416(h)(3) of this title,* the reduction shall be first applied to reduce (proportionately where there is

more than one benefit so payable) the benefits so payable (but not below zero)." [Emphasis added.]

The benefits plaintiffs are entitled to are obviously "payable solely by reason of section 416(h)(3) . . ."

When Charles E. Williams died the plaintiffs applied for and procured survivors' benefits for the minor plaintiffs, Charles Edward Williams and Teresa Jean Williams, under § 416(h)(3)(C)(ii), and these benefits were paid for the period from Williams' death in August, 1969, until June, 1970, at the monthly rate of $158.70.

Meanwhile, in February, 1970, the wage earner's legal wife, Edna Williams, applied for benefits for herself and her two children, Zerita Williams and Emily L. Williams. The benefits to Edna, Zerita and Emily L. Williams completely absorbed the "family maximum" benefit of $158.70 per month.

Obeying the statutory mandate of § 403(a), the Secretary thereupon cut off all benefits for plaintiffs Charles and Teresa Williams.

The above statutes provide three ways for admittedly illegitimate children to receive benefits. Plaintiffs can not inherit under the law of Maryland, and their parents did not go through a colorable marriage ceremony; two of the three ways thus appear closed. Nevertheless, though illegitimate, they applied for and received benefits under § 416(h)(3)(C)(ii). These benefits were then cut off under 42 U.S.C. § 403(a), and the application of this statute left plaintiffs with no source of benefits if § 403(a) is constitutional in its present application.

Plaintiffs were notified without a hearing that their benefits were being discontinued; on August 5, 1970, they requested reconsideration of the ruling; on September 22, 1970, they filed this action. At the hearing, counsel advised the court that because the legitimate children had now attained majority, benefits had been resumed for the individual plaintiffs. This would appear to

moot part of the claim but it still leaves open the claims of the class, and the claims of the individual plaintiffs for the period when they have been, or may in the future be, denied benefits because of 42 U.S.C. § 403(a).

## THE PRELIMINARY QUESTIONS

■ *Jurisdiction of the Three-Judge Court.*—The suit is brought under 28 U.S.C. § 2282, requesting an injunction restraining the defendant from depriving plaintiffs of benefits pursuant to an allegedly unconstitutional Act of Congress. The amount in controversy is alleged to be over $10,000 and the evidence supports this contention. There is jurisdiction over the subject matter of the suit under 28 U.S.C. § 1331. As indicated below there is also jurisdiction under 42 U.S.C. § 405(g). A three-judge court is proper because permanent injunctive relief is sought restraining the enforcement and operation of an Act of Congress based upon its alleged unconstitutionality. The case appears to be properly constituted in this court.

■ *Exhaustion of Administrative Remedies.*—Plaintiffs brought suit without waiting for decision by the Secretary on their request for reconsideration of the administrative ruling terminating their benefits. Defendant says the suit should be dismissed for failure to exhaust administrative remedies and procure a "final decision" by the Secretary as contemplated by 42 U.S.C. § 405(g).

If there were any practical prospect that the statutory administrative review procedure would be more than an empty formality, this position of defendant would merit serious consideration.

However, there is nothing for the Secretary to review. The material facts, as shown by the administrative record, are not in dispute; no "findings of fact" are required of the Secretary and no question of statutory construction is presented, and no review of any discretion or judgment of the Secretary is possible, because on these undisputed facts the defendant admits that he is required by the statute to deny plaintiffs' claims. He says further that he has no power to declare § 403(a) unconstitutional; that he has never declared any federal statute unconstitutional; that he has had this same claim presented several times before by other claimants and that neither he nor any of his predecessors has ever adjudicated a claim on grounds that a section of the Act is constitutionally invalid. Furthermore, in answer to Interrogatory No. 7, the defendant says that "in the context of the facts as shown by the administrative record in this case at this time *there appears to be no ground other than the [in]validity of 42 U.S.C. 403(a) upon which a determination of plaintiffs' claim favorable to plaintiffs could be rendered.*" [Emphasis added.]

The Secretary's decision may therefore be fairly taken as a "final decision," and there is jurisdiction under 42 U.S.C. § 405(g).

■ Where administrative review is certain to be fruitless and is calculated neither to afford relief nor even to afford a *review* of the one point at issue —the constitutionality of § 403(a)— failure to pursue administrative remedies should not be a bar to this suit. See McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); Deering Milliken, Inc. v. Johnston, 295 F.2d 856 (4th Cir., 1961).

■ *The Class Action.*—This is a properly constituted class action. The class consists of persons coming within the definition of "child" in 42 U.S.C. § 416(h)(3) who have been or may be subject to the deprivation of Social Security benefits by reason of 42 U.S.C. § 403(a). The class appears to be ascertainable and quite numerous, and presents questions of fact and law common to all members. The other class action requisites are present. (The motion for intervention filed on behalf of Tyrone Mitchell, a member of the class, is allowed.)

# THE DISCRIMINATION REQUIRED OF THE SECRETARY BY 42 U.S.C. § 403(a) IS CONSTITUTIONALLY INVALID.

■ Under § 416(b)(3)(C)(ii) an illegitimate child is a child and is entitled to federal Social Security Survivors' Benefits if he was living with or supported by an insured individual who is shown by evidence satisfactory to the Secretary to have been his father, when that insured individual died. However, under § 403(a), if that insured father happens to have been domiciled at his death in a state where illegitimate children may not inherit personal property, or if the child was not born of a technically invalid marriage, the federal government denies benefits to such illegitimate child if legitimates or the more favored illegitimates or both would use up the family maximum of benefits. On the face of it, this result is patently discriminatory against some illegitimate children based upon combined accidents of birth and geography rather than upon any lack of merit on their part. The discrimination has no rational basis.

*Protection Against "Spurious Claims" Does Not Justify the Discrimination.*— All of the problems of spurious allegations of paternity have already been settled, and paternity has been reliably established and found by the Secretary before a child can come within the class which is subjected to discrimination under § 403(a).

*Protection of the Wage Earner's "Family Unit" Does Not Justify the Discrimination.*—By definition the "family unit" to which members of the class must belong before they can become subject to the 403(a) discrimination includes the group of children of the particular father who, though illegitimate, were acknowledged by him in writing, were decreed by a court to be his children, or were receiving support from him under court order, or were shown by evidence satisfactory to the Secretary to be his children *and were living with him or receiving support*

*from him* at the time he died. Such children are no less likely to be part of a family unit or to have received support from the insured father than the illegitimates who can take under the intestate succession laws of the state where the insured father was domiciled at his death.

*Discouraging Illegitimacy Does Not Justify the Discrimination.*—The statute is punitive of the child, not the parent, and therefore is not a rational way to accomplish this purpose. Moreover, it does not disqualify all illegitimates; on the contrary, it allows benefits for those illegitimates whose parents "went through the motions" of a marriage, and those children who, though illegitimate, can inherit personal property. These invidious distinctions even among illegitimates tend rather strongly to rebut any contention that discouraging illegitimacy *per se* is a significant part of the statutory policy.

*The Discrimination is Geographical, Not Rational.*—No federal purpose is shown to be served by having a child's right to federal benefits depend on which state he lives in.

*No Administrative Convenience is Served.*—The administration of a nondiscriminatory statute would, in fact, be easier than the administration of the present statute which requires that the Social Security Administrator keep up with the nuances of domicile and of local inheritance laws, and administer those laws as a means of locating and excluding affected illegitimates from benefits they otherwise would receive.

*The Regulation in Practice May Be Racially Discriminatory.*—According to the evidence there are approximately six times as many black illegitimates per 1,000 black births as there are white illegitimates per 1,000 white births in the United States at large. [In North Carolina the ratio is approximately nine to one.] It can perhaps be said that the discrimination is mostly discrimination between blacks rather than discrimination against blacks.

However, with black illegitimacy proportions outnumbering white illegitimacy by such wide margins, the net economic burden under § 403(a) rests much more heavily upon black children than upon white.

*No Considerations of Legitimate State Purposes Are Involved.*—The case deals purely with the distribution of federal benefits by a federal agency. It does not deal with the constitutionality of the law of any state. It does not present a clash between any policy of the federal government and any policy of any state. It raises no questions of federalism, abstention, comity or conflicts between federal and state policies. *Dombrowski* need not be revisited. It does not relate to any state interest at all. The issue is one of the inherent fairness of a federal statute, not a conflict between federal and state statutes, interests or procedures.

It is apparent that for lack of any rational justification, the § 403(a) discrimination against § 416(h)(3) children and in favor of legitimates and more favored classes of illegitimates violates the due process clause of the Fifth Amendment to the United States Constitution.

At the time this case was heard in February, 1972, considerable attention in brief and argument was given to the cases of Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) and Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971). *Levy* held invalid as denying equal protection of law a Louisiana statute denying to illegitimates the right to recover for wrongful death of their mother while allowing such rights to legitimate children. The Court in *Levy* said:

"Legitimacy or illegitimacy of birth has no relation to the nature of the wrong allegedly inflicted on the mother. These children, though illegitimate, were dependent on her; she cared for them and nurtured them;

they were indeed hers in the biological and in the spiritual sense; in her death they suffered wrong in the sense that any dependent would." 391 U.S. p. 72, 88 S.Ct. p. 1511.

*Labine,* on the other hand, upheld Louisiana laws of intestate succession which barred illegitimate children from sharing equally in inheritance from their father's estate.

Neither *Levy* nor *Labine* appears to indicate a contrary result. Both cases dealt with state statutes rather than with Acts of Congress; *Levy* is rationally consistent with the result we reach here; and *Labine* which may be inconsistent, can be reconciled because of its heavy reliance on long-standing deference to the traditional prerogative of states to regulate descent and distribution of property.

The latest Supreme Court decision in this area is Weber v. Aetna Casualty & Surety Co., et al., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768, decided April 24, 1972. Although *Weber*, like *Levy* and *Labine*, is not controlling, it supports in principle the decision we reach here. *Weber* held invalid as a denial of equal protection under the Fourteenth Amendment that portion of a Louisiana workmen's compensation law which denied illegitimate unacknowledged dependent children the right to share equally with legitimate children in workmen's compensation benefits. The wage earner had two illegitimate children and four legitimate children; the legitimate children exhausted the benefits available and the illegitimates were frozen out. The Court held that the illegitimate children should share equally with the legitimates. In the opinion Mr. Justice Powell pointed out that the discrimination against illegitimates bore no reasonable relation to the purpose of workmen's compensation statutes which compensate children upon the death of a parent. The discrimination was classed as "impermissible." Said Mr. Justice Powell (in an opinion which would have brought approval both from Alexander

Hamilton—himself an illegitimate—and from the bard of Avon*):

"An unacknowledged illegitimate child may suffer as much from the loss of a parent as a child born within wedlock or an illegitimate later acknowledged. So far as this record shows, the dependency and natural affinity of the unacknowledged illegitimate child for her father were as great as those of the four legitimate children whom Louisiana law has allowed to recover. The legitimate children and the illegitimate child all lived in the home of the deceased and were equally dependent upon him for maintenance and support. It is inappropriate, therefore, for the court below to talk of relegating the unacknowledged illegitimate 'to a less favorable position as are other dependent relatives such as parents.' The unacknowledged illegitimate is *not* a parent or some 'other dependent relative'; in this case she is a *dependent child,* and as such is entitled to rights granted other *dependent children." Weber, supra,* 92 S.Ct. 1403.

\* \* \* \* \* \*

"The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffec-

tual—as well as an unjust—way of deterring the parent. Courts are powerless to prevent the social opprobrium suffered by these hapless children, but the Equal Protection Clause does enable us to strike down discriminatory laws relating to status of birth where —as in this case—the classification is justified by no legitimate state interest, compelling or otherwise." *Weber, supra,* 92 S.Ct. 1406.

Subsequent to *Weber,* on May 8, 1972, a three-judge court for the District of Connecticut, in Davis v. Richardson, 342 F.Supp. 588, considered a case similar to this one, and concluded at p. 591 that § 403(a) is unconstitutional under the due process clause of the Fifth Amendment as an illustration of

". . . statutes creating arbitrary discriminations which have no rational basis in legitimate governmental purposes. Although there is no specific equal protection guarantee applicable to the federal government, equal protection standards have been imported into the due process clause of the fifth amendment. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); Bolton v. Harris, 130 U.S.App.D.C. 1, 395 F. 2d 642 (1968). Although Congress has great latitude to make classifications in the area of economic and welfare legislation, a provision must have some rational basis or be pertinent to some proper objective of the Congress in order to withstand challenge."

\* "Why bastard? wherefore base?
When my dimensions are as well compact,
My mind as generous, and my shape as true,
As honest madam's issue? Why brand they us
With base? with baseness? bastardy? base, base?
Who, in the lusty stealth of nature, take
More composition and fierce quality
Than doth, within a dull, stale, tired bed,
Go to the creating a whole tribe of fops,

Got 'tween asleep and wake? . . .
Our father's love is to the bastard Edmund
As to the legitimate. Fine word, 'legitimate!' . . .
. . . I grow; I prosper.
Now gods, stand up for bastards!"
—Edmund the Bastard in KING LEAR, Act I Scene II (W. Shakespeare, c. 1597).

## CONCLUSION

We conclude that the statute under attack is unconstitutionally discriminatory; that the Secretary should no longer enforce its provisions; that the plaintiffs are entitled to receive benefits without regard to the bar of § 403(a); and that the defendants should be required to establish procedures for making benefits available for pertinent periods to the individual plaintiffs and to all others in the class.

WOODROW WILSON JONES, Chief District Judge (dissenting):

The plaintiffs challenge the statutory scheme of priorities provided in Section 203(a)(3) of the Social Security Act, 42 U.S.C.A., 403(a)(3), contending that it constitutes an invidious discrimination against the class of illegitimate children defined in Section 216(h)(3), 42 U.S.C.A., 416(h)(3). The majority strikes down the Congressional enactment as violative of the Due Process Clause of the Fifth Amendment on the grounds that it is unfair, that it has no rational, reasonable, or legitimate basis, and that it may be racially discriminatory since the plaintiffs contend that on a percentage basis there are more non-white than white illegitimate children. I respectfully dissent.

The facts are simple and are not in dispute. Charles E. Williams, an insured wage earner, had two families—one legitimate and the other illegitimate. The legal family consisted of a wife and two children who resided in Baltimore, Maryland. The other family, residing in Charlotte, North Carolina, was made up of one Mae Helen Livingston, with whom Williams was living at the time of his death in 1969, and two illegitimate children, the plaintiffs in this action. Immediately after his death the plaintiffs were awarded Social Security benefits effective June 9, 1969. In February 1970 the widow and the legitimate children filed for benefits and their claim was allowed. The plaintiffs were notified by the Secretary that the benefits allowed the legitimate children completely absorbed the "family maximum" of $158.70 per month so that their benefits pursuant to Section 216(h)(3) were no longer payable and would cease as of June 1, 1970. Plaintiffs requested a reconsideration but instituted this action before a determination of their request could be made.

I would not reach the constitutional issue, but instead would dismiss the three-judge court action and relegate the plaintiffs to their administrative remedies. In fact, the real issue involved in this cause has long since been determined in favor of the plaintiffs by administrative action. At the February 18, 1972 hearing before the three-judge court, counsel for plaintiffs announced that the two legitimate children were no longer eligible for benefits and that the plaintiffs had been reinstated and were then receiving the benefits which they seek in this action. Insofar as these plaintiffs are concerned, the action has therefore become moot. However, the majority finds that the plaintiffs' claim for benefits during the period they were denied is still at issue. At most, this claim could amount to only a few hundred dollars since it is based upon the plaintiffs' pro rata part of the "family maximum" of $158.70 per month from June 1, 1970 to February 1, 1972. Under no stretch of the imagination could such claim amount to $10,000 as alleged by the plaintiffs and determined by the majority.

If it becomes necessary to reach the constitutional issue it may be raised before and determined by a single federal judge after the administrative remedies have been exhausted. Section 205(g) and (h) of the Act, 42 U.S.C.A., 405(g) and (h) provides for judicial review of the decision of the Secretary on claims arising under Title II of the Act, irrespective of the amount in controversy. On such judicial review the hearing judge can determine the constitutional question. Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435, Parker v. Sec. HEW, 453 F.2d 850 (5th Cir. 1972), Garner v. Richardson, 333 F. Supp. 1191 (N.D.Cal.1971).

This Act of Congress is not violative of the Due Process Clause of the Fifth Amendment. Congress is charged with the awesome duty of levying taxes upon the working people of our land to provide the trust funds from which benefits are paid, and to determine to whom, how, and in what amounts they will be paid. It must have wide latitude in making classifications, and the courts must uphold such selections unless they are so arbitrary as to be totally devoid of a rational basis. We do not determine the fairness nor the wisdom of the scheme of benefits. Such power resides in the Congress, and we are not members of that body. As Justice Cardozo said in an early court test of the Act:

"Whether wisdom or unwisdom resides in the scheme of benefits set forth in Title II, it is not for us to say. The answer to such inquiries must come from Congress, not the courts. Our concern here as often is with power, not with wisdom." Helvering v. Davis, 301 U.S. 619, 644, 672, 57 S.Ct. 904, 910, 81 L.Ed. 1307.

Congress in the exercise of its power has made a distinction between illegitimate and legitimate children in Social Security benefits, and the only question for this court is whether there is a rational basis for such classification.

For decades the law of our land has recognized and approved the legal distinction between legitimate and illegitimate children and between wives and concubines. The basis for such distinction has been to strengthen and preserve the family life of our nation which has contributed so much to our civilization. No one can say this is not a reasonable or rational basis for such distinction. The Fifth Circuit Court concluded in Parker v. Secretary, *supra*, that the act in question here was valid, and said:

"We conclude that the statute in question may be justified on the basis of the Congress giving precedence or priority to the legitimate children in the interest of strengthening and preserving family ties and as a part of the total scheme of the Act. This justification will be seen from the record here."

Perhaps Justice Black answered all of the questions arising in this action when he said in Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288:

"* * * The Federal Constitution does not give this Court the power to overturn the State's choice under the guise of constitutional interpretation because the Justices of this Court believe that they can provide better rules. Of course, it may be said that the rules adopted by the Louisiana Legislature 'discriminate' against illegitimates. But the rules also discriminate against collateral relations, as opposed to ascendants, and against ascendants, as opposed to descendants. Other rules determining property rights based on family status also 'discriminate' in favor of wives and against 'concubines.' The dissent attempts to distinguish these other 'discriminations' on the ground that they have a biological or social basis. There is no biological difference between a wife and a concubine nor does the Constitution require that there be such a difference before the State may assert its power to protect the wife and her children against the claims of a concubine and her children. The social difference between a wife and a concubine is analogous to the difference between a legitimate and an illegitimate child. One set of relationships is socially sanctioned, legally recognized, and gives rise to various rights and duties. The other set of relationships is illicit and beyond the recognition of the law. Similarly, the State does not need biological or social reasons for distinguishing between ascendants and descendants. Some of these discriminatory choices are perhaps more closely connected to our conceptions of social justice or the ways in which most dying men wish to dispose of their property than the Louisiana rules governing illegitimate children. It may be possible that

some of these choices are more 'rational' than the choices inherent in Louisiana's categories of illegitimates. But the power to make rules to establish, protect, and strengthen family life as well as to regulate the disposition of property left in Louisiana by a man dying there is committed by the Constitution of the United States and the people of Louisiana to the legislature of that State. Absent a specific constitutional guarantee, it is for that legislature, not the life-tenured judges of this Court, to select from among possible laws. We cannot say that Louisiana's policy provides a perfect or even a desirable solution or the one we would have provided for the problem of the property rights of illegitimate children. Neither can we say that Louisiana does not have the power to make laws for distribution of property left within the State."

The argument is made here that the father was living with and supporting the illegitimate plaintiffs and that the action of the Secretary in withholding their benefits and relegating them to take after the legitimate children constitutes an invidious discrimination, and that there is no reasonable or rational basis for such classification. No one would quarrel with the fairness of this argument, but we cannot strike down this statute on the basis of what we think is fair or wise. Originally, the plaintiffs would not have been entitled to benefits under the Act, but Congress has enlarged the survivors' insurance program to provide benefits for Section 216(h)(3) children who were previously excluded from the program altogether. In doing so, Congress has attached conditions that in the event the "family maximum" benefits are exhausted, the legitimate children will take in preference to illegitimate children. On the basis of the law of the land, no court should say that such condition is so utterly lacking in a rational basis as to render this section violative of the Due Process Clause of the Fifth Amendment.

The plaintiffs cite and rely upon Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436; Glona v. American Guarantee & Liability Ins. Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441, and Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 in support of their position. In *Levy*, the court struck down a Louisiana statute which barred illegitimate children's cause of action for the wrongful death of their mother, and in *Glona*, permitted the mother of an illegitimate child to recover for his wrongful death and struck down the Louisiana statute which prohibited such recovery. *Weber* extended the rationale of *Levy* and *Glona* to cover Workmen's Compensation, and permitted dependent illegitimate children to share with dependent children in such proceeds.

After *Levy* and *Glona* were decided, the court in Labine v. Vincent, *supra*, upheld the Louisiana intestate succession laws which permitted an illegitimate child from sharing equally with legitimate children in their father's estate. The court made it clear that *Levy* and *Glona* should not be read as broadly as the plaintiffs contend in this cause. Justice Black said in *Labine:* "*Levy* did not say and cannot fairly be read to say that a State can never treat an illegitimate child differently from legitimate offspring." The court held in *Labine* that the Louisiana intestate succession statute had a rational basis in view of Louisiana's interest in promoting family life and of directing the disposition of property left within the state. In Dandridge v. Williams, 397 U.S. 471, 90 S. Ct. 1153, 25 L.Ed.2d 491, the court upheld the constitutional validity of a maximum family grant provision of a welfare statute which discriminated against large families in favor of smaller families. The court held:

"'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed. 2d 393."

The court said further:

"In the area of economics and social welfare, a State does not violate the

Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' "

The distinction made by the court in these cases is whether there is a "rational basis" for the state and Congressional action. In *Levy, Glona,* and *Weber* the court found no rational basis for the classification or distinction made between legitimate and illegitimate children, while in *Labine* and *Dandridge* rational basis did exist for the discrimination and classification.

There is a rational basis for the Congressional action in distinguishing between legitimate and illegitimate children in the case at bar. I would, therefore, declare the Act valid, and dismiss the action.