Paul KOHR, on behalf of himself and all others similarly situated, Plaintiff,

v.

Caspar W. WEINBERGER, Individually and as Secretary of the Department of Health, Education and Welfare, et al., Defendants.

Civ. A. No. 73–1698.

United States District Court, E. D. Pennsylvania.

July 26, 1974.

**1300**

Robert E. J. Curran, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Philadelphia, Pa., Frank L. Dell'Acqua, Chief of Litigation, James C. Pyles, Atty., Social Security Div., Dept. of Health, Education and Welfare, Washington, D.C., for defendants.

David A. Scholl, Annette Hearing Sullivan, Chester, Pa., for plaintiffs.

Before VAN DUSEN, Circuit Judge, and HIGGINBOTHAM and FOGEL, District Judges.

## OPINION

FOGEL, District Judge.

This action, brought by plaintiff Paul Kohr on behalf of himself and similarly situated male recipients of social security benefits, challenges the constitutionality of § 215(b)(3) of the Social Security Act, 42 U.S.C. § 415(b)(3), because that provision accords females receiving social security payments under the terms of that subsection more favorable benefit computation than their male counterparts.

A three judge court was constituted pursuant to 28 U.S.C. §§ 2282, 2284. All relevant facts have been stipulated, and the case can be decided on the cross motions for summary judgment filed by the parties. Oral argument was heard, and extensive briefs were filed with respect to the jurisdiction of this Court as well as the substantive merits of the controversy.

We conclude that plaintiff has satisfied the relevant jurisdictional requirements, but that relief on the merits must be denied.

■ We deal first with defendants' contention that this Court lacks jurisdiction over the subject matter of the action because plaintiff has failed to exhaust his administrative remedies.

Plaintiff filed an application for retirement insurance benefits on November 1, 1971, listing his date of birth as February 10, 1910. The Social Security Administration determined that he was entitled to a monthly retirement benefit of $162.50, effective in February of 1972, based upon the primary insurance amount of $203.10; the monthly benefit amount was subsequently increased to $163.60, based upon a pri-

mary insurance amount of $204.50, effective in February of 1972, and to $198.00, based upon a primary insurance amount of $245.40, effective in September of 1972. Plaintiff filed a formal request for reconsideration on June 8, 1972, claiming that he should have been awarded benefits equal to those paid to women similarly situated. The reconsideration decision, dated July 14, 1972, reaffirmed the initial determination of benefits, and informed plaintiff that, under the applicable regulations, he could request a hearing within six months from the date of that decision. Plaintiff did not request such a hearing, but instead filed the instant action in July of 1973.[1]

Plaintiff concedes that he did not exhaust all administrative remedies then available to him, but he contends that, under the circumstances presented in this case, further proceedings within the Social Security Administration would have been futile.

Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), provides as follows, in pertinent part:

(g) Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. * * *

Section 205(h) further provides:

* * * No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter. [Section 41 of Title 28 has been superseded by 28 U.S.C. § 1331 et seq.]

We do not agree that the requirement of a "final decision . . . made after a hearing" is a bar to plaintiff's cause of action in the instant case; we hold that this Court has jurisdiction under § 205(g) of the Social Security Act. Williams v. Richardson, 347 F.Supp. 544, 548 (W.D.N.C.1972). The futility of further pursuit of administrative remedies is clear from an examination of the reconsideration determination of July 14, 1972. Even though plaintiff's claim was based upon the alleged discriminatory treatment accorded to him in contrast to that accorded to a woman in like circumstances, this constitutional issue is not even discussed in the reconsideration determination; that document merely restates the benefits computation formula found in the pertinent statute and regulations, and confirms the arithmetic correctness of the computation. Plaintiff did not allege that the benefits determination was based upon an erroneous view of the facts; instead he attacked the statutory framework and the regulations promulgated pursuant thereto on constitutional grounds. Hence, the reconsideration determination was simply not responsive to the core of plaintiff's claim. Further pursuit of administrative remedies would unquestionably have been similarly unproductive since the agency would not strike down as unconstitutional a portion of the Act it is bound to administer.[2] Gainville v. Richardson, 319 F.Supp. 16, 18 (D.Mass. 1970); Williams v. Richardson, *supra,*

---

1. Affidavit of James E. Forbus, Deputy Director of the Bureau of Retirement and Survivors Insurance of the Social Security Administration, filed in support of defendants' motion for summary judgment. The factual assertions in Mr. Forbus' affidavit are not disputed.

2. Plaintiff does not contend that the Social Security Administration acted improperly in rejecting his constitutional claim; on the contrary, he states that the agency was very properly bound by the presumptively valid statute and regulations. He merely claims that an administrative agency is not a suitable forum for adjudication of constitutional claims.

347 F.Supp. at 548; Wiesenfeld v. Secretary of Health, Education & Welfare, 367 F.Supp. 981, 985 (D.N.J.1973).[3]

■ We now turn to the merits of plaintiff's claim. At issue is the benefits computation formula mandated by § 215(b)(3) of the Act, which permits a woman to use three fewer "elapsed years" to compute her "benefit computation years" than would a similarly situated man. The effect of this provision is to eliminate years of lower earnings in the computation of the "average monthly wage", from which the "primary insurance amount" is determined. In the present case, plaintiff would have received $205.00 in actual cash benefits per month had he been a woman, $7.00 per month more than he in fact receives. It is this discrepancy which plaintiff maintains is in violation of the due process clause of the Fifth Amendment, in that it unconstitutionally discriminates against him because he is a male.[4]

The precise issue presented in this case has been decided by three different federal courts during the last six years, each of which has sustained the constitutionality of § 215(b)(3).

In Gruenwald v. Gardner, 390 F.2d 591 (2d Cir. 1968), cert. den. sub nom. Gruenwald v. Cohen, 393 U.S. 982, 89 S. Ct. 456, 21 L.Ed.2d 445, the Court of Appeals for the Second Circuit upheld § 215(b)(3) on the basis of the "rational justification" test enunciated in Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), and Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). The Court concluded that there was a "reasonable relationship between the objective sought by the classification, which is to reduce the disparity between the economic and physical capabilities of a man and a woman—and the means used to achieve that objective in affording to women more favorable benefit computations." *Gruenwald, supra,* 390 F.2d at 592.[5]

---

3. We have given consideration to the Court's decision in Bartley v. Finch, 311 F.Supp. 876, 878 (E.D.Ky.1970), aff'd 404 U.S. 980, 92 S.Ct. 442, 30 L.Ed.2d 364 (1971), and find its reasoning unpersuasive. The summary affirmance by the Supreme Court is explicitly based upon the alternative ground of the District Court's opinion, viz., that § 224 of the Social Security Act is constitutional, and cannot be urged in support of a doctrine of exhaustion of administrative remedies where constitutional claims are involved.

4. The Fifth Amendment has no equal protection clause, but it prohibits discrimination that is so unjustifiable as to be violative of due process of law. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Analytical techniques developed in Fourteenth Amendment equal protection cases have been applied in cases arising under the due process clause of the Fifth Amendment. See Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973).

5. There is some indication in the legislative history of the 1961 amendments to the Social Security Act, which added the provisions at issue in this litigation, that Congress considered the absence of employment opportunities of older women as a relevant factor in adopting the favorable benefits computation formula in § 215(b)(3). We note the following comment by the late Congressman Hale Boggs during the Executive Hearings before the House Committee on Ways and Means, 87th Congress, 1st Session, March 27, 1961:

> "Mr. Boggs. If I may interrupt, I think we went into this at great length some years ago when we adopted the 62-year provision for women and the theory was that a woman at that age was less apt to have employment opportunities than a man and despite the fact of some statistics to the effect that women live longer than men, I think the other fact is equally commanding, so that there is some justification for a distinction between men and women."

Congressman Boggs' reference is to the legislative history of the 1956 amendments to the Social Security Act, which reduced the retirement age of women from sixty-five to sixty-two. The report of the House Ways and Means Committee included the following reasons, inter alia, in support of its recommendation to the full House membership that the amendment according this preferential treatment to women be adopted.

> Your committee is concerned about the situation of elderly couples after the husband retires . . .

Subsequent to the decision in *Gruenwald*, the Supreme Court in two decisions cast some doubt on the continuing applicability of the "rational justification" test in cases where the alleged discrimination is based on sex. In Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L. Ed.2d 225 (1971), the Court seemed to adopt a somewhat stricter test, requiring that the classification be "reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike", 404 U.S. at 76, 92 S.Ct. at 254, citing Royster Guano Co. v. Virginia, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920). Then, in Frontiero v. Richardson, *supra*, four members of the Court concluded that classifications based on sex were "inherently suspect", and would require "close judicial scrutiny". It is significant to note that, even in the plurality opinion, *Gruenwald* was cited with apparent approval:

"It should be noted that [the statutes challenged in *Frontiero*] are not in any sense designed to rectify the effects of past discrimination against women. See Gruenwald v. Gardner, 390 F.2d 591 (CA2 1968), cert. denied, 393 U.S. 982, 89 S.Ct. 456, 21 L. Ed.2d 445 (1968) * * *. On the contrary, these statutes seize upon a group—women—who have historically suffered discrimination in employment, and rely on the effects of this past discrimination as a justification for heaping on additional economic disadvantages. * * * *" Frontiero, *supra*, 411 U.S. at 689, n.22, 93 S.Ct. at 1771.

Both of the courts which have considered the constitutionality of § 215(b)(3) since the decision in *Frontiero* have determined that the holding in *Gruenwald* if not its exact language, has remained viable. McEvoy v. Weinberger, No. 72–1727–Civ–JE (S.D.Fla., August 28, 1973); Polelle v. Secretary of Health, Education & Welfare, No. 73C774 (N.D. Ill., 1974) (3 judge court). Each decision relied upon the effect of the statute to rectify *past* discrimination against women, in contrast to the legislation attacked in *Frontiero*, which heaped additional economic disadvantages on women. The Court in *McEvoy* also found a compelling governmental interest, which presumably would satisfy the strict scrutiny requirement of the plurality in *Frontiero*, in the reduction of economic disparity between the sexes; the Court in *Polelle*, in a more limited holding, found that reduction of economic disparity between the sexes which is the result of past or present discrimination provides a compelling governmental interest. Each decision, therefore, concluded that § 215(b)(3) met both the looser and stricter standards.

■ Two decisions of the Supreme Court which have been handed down during the present Term are helpful in determining the proper test to apply in cases in which the issue is alleged discrimination based on sex. Both of these cases make it clear that the "close judicial scrutiny" test does not apply to cases involving discrimination of this character.

■ In Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974), the Court upheld a Florida law which granted a $500.00 property tax exemp-

Your committee also is keenly aware of the plight of women widowed when they are not many years below age 65. Many of these widows have never worked or have not had recent work experience. As a result, when the death of the family earner makes a search for employment necessary many widows find it impossible to secure jobs . . .

Your committee believes that the age of eligibility should be reduced to 62 for women workers, also. A recent study by the United States Employment Service in the Department of Labor showed that age limits are applied more frequently to job openings for women than for men and that the age limits applied are lower.

H.R.Rep.No.1189, 84th Cong., 1st Sess. 7 (1955).

**1304**

tion to widows but not to widowers. Reed v. Reed and Royster Guano Co. v. Virginia were cited as controlling, and *Frontiero* was distinguished as a case "where the Government denied its female employees both substantive and procedural benefits granted males 'solely for administrative convenience.'" 416 U.S. at 355, 94 S.Ct. at 1737. It is especially significant that the Court quoted footnote #22 to the opinion in *Frontiero*, in which *Gruenwald* was cited with approval, and a distinction was made between statutes which rectify the effects of past discrimination against women and those which inflict additional economic disadvantages. 416 U.S. at 355, 94 S.Ct. 1734.

In Geduldig v. Aiello, —— U.S. ——, 94 S.Ct. 2485, 41 L.Ed.2d —— (June 17, 1974), the Court upheld a provision in the California disability insurance system which excluded from coverage the risk of disability resulting from normal pregnancy. The Court found that while pregnancy was related to gender, the California statute did not involve discrimination based on sex as such; *Reed* and *Frontiero* were distinguished on this ground. The rational basis test was applied.

> Particularly with respect to social welfare programs, so long as the line drawn by the State is rationally supportable, the courts will not interpose their judgment as to the appropriate stopping point. 94 S.Ct. 2491.

We therefore decline to apply the "close judicial scrutiny" test to the statutory provision here in question.[6] Further, we are satisfied that § 215(b)(3) is well within the constitutional limits set in Royster Guano Co. v. Virginia, Reed v. Reed, and Kahn v. Shevin, *supra*, in that the statutory classification is reasonable and not arbitrary, and has a fair and substantial relationship to the object of the legislation, because its effect is to rectify the economic effects of past discrimination against women.[7]

The actual cash benefit an individual receives under the provisions of the Social Security Act is dependent upon the particular person's "average monthly wage", that is, the earnings history during the course of the individual's productive life. Since it is beyond dispute that women have suffered discrimination in the job market in past years,[8] Frontiero v. Richardson, 411 U.S. at 684, 686, 93 S.Ct. 1764, present payments of Social Security benefits are inextricably intertwined with, and have become an effect of this past discrimination. To the extent that § 215(b)(3) corrects the imbalance caused by such discrimination, it violates no constitutional principle. The fact that it may deal with only one aspect of the problem does not render it constitutionally defec-

---

**6.** In this respect we decline in this case to follow the Court in Wiesenfeld v. Secretary of Health, Education & Welfare, *supra*, 367 F.Supp. at 990. · We note that the decision in *Wiesenfeld* preceded Kahn v. Shevin and Geduldig v. Aiello, cases which made it clear that the Supreme Court has not adopted the "strict judicial scrutiny" test in 5th and 14th Amendment cases dealing with alleged discrimination based on gender.

**7.** We find it unnecessary to decide whether Reed v. Reed established a new or "intermediate" equal protection standard. *Compare* Wiesenfeld v. Secretary of Health, Education & Welfare, *supra*, 367 F.Supp. at 988, *with* Samuel v. University of Pittsburgh, 375 F.

Supp. 1119 at p. 1132 (W.D.Pa.1974). Since we have determined that § 215(b)(3) is constitutional under the decision in *Reed*, it is immaterial whether the standard is felt to be "traditional" or "intermediate."

**8.** Figures from the United States Bureau of the Census, Current Population Reports, Consumer Income P–60, No. 85 (December 1972) indicate that in 1960, when plaintiff's income was $4,800.00, the median income of males was $4,081.00, while that of females was $1,262.00; in 1970, when plaintiff's income was $7,800.00, the median income for males was $6,670.00, while that of females was $2,237.00.

tive; the government may choose to treat only one phase of a problem, neglecting others, for it is not compelled to choose between a course of total assault on every aspect of a problem or one of complete abstention. Geduldig v. Aiello, *supra,* —— U.S. ——, 94 S.Ct. 2485.

Congress has taken steps in recent years to eliminate discrimination in the job market, and to lessen the economic disparity between men and women. The Equal Pay Act of 1963, 29 U.S.C. § 206(d), provides that no employer subject to the provisions of the Act shall discriminate with respect to wages between employees on the basis of sex. Title VII of the Civil Rights Act of 1964 included sex along with race, color, religion and national origin as forbidden areas of discrimination, 42 U.S.C. § 2000e–2(a), (b), (c). The Equal Rights Amendment was passed by Congress on March 22, 1972, and is awaiting ratification by the states.

These Congressional reforms may well have lessened the economic justification for the more favorable benefit computation formula in § 215(b)(3). Indeed, Congress has amended the provision, P. L. 92–603, § 104, 86 Stat. 1341 (October 30, 1972), so that men who attain the age of 62 after the end of 1974 will be treated the same as women. After more than ten years of experience under the remedial legislation, Congress could certainly have concluded that further compensation for past discrimination in the job market was unnecessary. See McEvoy v. Weinberger, *supra,* at p. 1 (slip opinion), and Polelle v. Secretary of Health, Education & Welfare, *supra,* at p. 4 (slip opinion).

For the reasons discussed above, we hold that § 215(b)(3) is a valid exercise of Congressional authority in the area of social welfare. Summary judgment in favor of the defendants will therefore be granted and plaintiff's motion for summary judgment will be denied.

An order will be entered accordingly.