Sidney LERNER

v.

Elliot RICHARDSON.

Civ. A. No. 72–1976.

United States District Court,
E. D. Pennsylvania.

March 27, 1975.

———◆———

Thomas F. McDevitt, Philadelphia, Pa., for plaintiff.

Frank J. Bove, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

BRODERICK, District Judge.

This is an action filed by the claimant for judicial review of the "final deci-

sion" of the Secretary of Health, Education and Welfare relating to the amount of disability benefits payable to the claimant under the Social Security Act, 42 U.S.C. § 401 et seq. This Court has jurisdiction of the action by virtue of Section 205(g) of the Social Security Act. 42 U.S.C. § 405(g). Presently before the Court is the Secretary's motion for summary judgment. Neither the facts nor the law applicable thereto are in dispute. The issue presented is whether the method used by the Secretary to compute the monthly disability benefits payable to the claimant is in accordance with the law. The claimant also contends that Section 215 of the Social Security Act which sets forth the method for computing disability benefits is unconstitutional. Upon a review of the undisputed facts and the law applicable thereto, this Court rejects the claimant's contentions and grants the Secretary's motion for summary judgment.

Claimant became totally disabled on October 26, 1969, as a result of a heart condition. On January 28, 1970, the claimant filed an application for disability benefits. Based on this application a determination of award was made that the claimant was entitled to disability benefits as of May 1970. The claimant requested reconsideration on the ground that the formula which was used to compute the amount of his benefits was erroneous. After the reconsideration, a determination was made on October 8, 1970 that the amount of benefits being paid the claimant was correct. On March 29, 1971, the claimant filed a request for a hearing. Subsequent to the hearing, the Administrative Law Judge issued a decision on July 23, 1971 holding that the formula used to compute the claimant's benefits was correct and that the claimant was not entitled to additional benefits. On September 10, 1971, a request for review of the Administrative Law Judge's action was filed.

The Appeals Council on February 25, 1972, upheld the Administrative Law Judge's decision.

The claimant is a medical doctor who was self-employed up until his disability in October 1969, except for the period from February 21, 1953 to February 25, 1955,[1] during which time he served in the U.S. Air Force. Prior to 1965, self-employment income received by an individual in the exercise of his profession as a physician was specifically excluded from his earning record by the Social Security Administration. See § 211(c) of the Social Security Act. After the 1965 Amendments to the Social Security Act (P.L. No. 89–97, Section 311(a)(1), 79 Stat. 380, July 30, 1965), this exclusion was eliminated. The amendment specifically provided that the elimination of the exclusion "shall apply only with respect to taxable years ending on or after December 31, 1965."

In computing the primary insurance benefits payable under the Act, the wage earner's "average monthly wage" as defined in 42 U.S.C. § 415(b) is the critical factor.

Section 415(b) provides in part:

"(1) * * * [A]n individual's 'average monthly wage' shall be the quotient obtained by dividing—

"(A) the total of his wages paid in and self-employment income credited to his 'benefit computation years' (determined under paragraph (2)), by

"(B) the number of months in such years.

"(2) (A) The number of an individual's 'benefit computation years' shall be equal to the number of elapsed years (determined under paragraph (3) of this subsection), reduced by five; except that the number of an individual's benefit computation years shall in no case be less than two.

"(B) An individual's 'benefit computation years' shall be those computa-

---

1. The claimant also served in the Armed Forces from December 30, 1943 to July 12, 1945. This period of service is not relevant to the issue before this Court.

tion base years, equal in number to the number determined under subparagraph (A), for which the total of his wages and self-employment income is the largest.

"(C) For purposes of subparagraph (B), 'computation base years' include only calendar years in the period after 1950 and prior to the earlier of the following years—

"(ii) the year succeeding the year in which he died. * * *

"(3) For purposes of paragraph (2), the number of an individual's elapsed years is the number of calendar years after 1950 (or, if later, the year in which he attained age 21) and before—

■ The claimant alleges that the Secretary erroneously computed his "average monthly wage". The claimant's "average monthly wage" was computed as follows: The number of benefit computation years is 13, i.e., the number of years elapsing after 1950 and before 1969 (when claimant became disabled) reduced by five.[2] The total of the claimant's credited earnings in the best 13 years of his employment were divided by the number of months in 13 years and the quotient was translated by applicable tables into a primary insurance amount paid monthly to the claimant. In determining the claimant's "average monthly wage", all self-employment income obtained by the claimant in the practice of medicine before 1965 was excluded. The non-covered earnings, i.e., earnings derived from self-employment as a physician, were considered to be zero. The years in which the claimant derived his total income from the practice of medicine were included in establishing the number of benefit computation years (i.e., 18 years less 5, or 13 years). The

earnings derived from self-employment as a physician prior to 1965 were not included in the total amount of covered earnings used in the computation. The result was that only the 8 years (1953, 1954, 1955 and 1965 through 1969) of the claimant's covered employment contributed positive amounts to his total earnings, but in determining the average monthly wage, the divisor was the number of months contained in 13 years, i.e., 8 years' wages were divided by 13 years to determine the average monthly wage during those 13 years.

The claimant contends that in his computation, the Secretary should have included the earnings derived from self-employment as a physician for the years 1950, 1951, 1952, 1956, 1957, 1958, 1959, 1960, 1961, 1962, 1963, 1964, 1965, or, in the alternative, should have excluded those years in computing the "average monthly wage."

The inclusion or exclusion of years of employment or categories of income covered by the various Social Security plans "are matters which, because of social considerations, address themselves to the Congress and not to this Court." Furst v. Weinberger, [1973–1974 Transfer Binder] CCH Unemp.Ins.Rep. ¶ 17,291 (U.S.D.C.N.D.Ga.1973). The explicit statutory language, quoted above, clearly reflects the Congressional intent as to the method of computing Social Security benefits. Although the object of Social Security is to replace lost wages, the Act has not in the past, nor does it currently, include all wages and all self-employment income.[3] The history of the Act shows that it has been repeatedly broadened both as to coverage and as to inclusions of wages and self-employment income. Congress has found it necessary to build into the Social Security System a formula designed to prevent the dissi-

---

2. Because only the years of highest earnings are used in computing the "average monthly wage" the effect of decreasing by 5 the number of years used in the computation is to eliminate the years of lower earnings

from the raw figures, which thus increases the "average monthly wage."

3. See §§ 210(a) and 211(c), 42 U.S.C. §§ 410(a) and 411(c) for present exclusions.

pation of the Social Security Fund by those groups who have made limited contributions to the fund, and to protect those individuals who have been in covered employment for a considerable portion of their working lives.

A case which has dealt squarely with the issue herein presented is Furst v. Weinberger, [1973–1974 Transfer Binder] CCH Unemp.Ins.Rep. ¶ 17,291 (U.S. D.C.N.D.Ga.1973). In *Furst,* the claimants made the same challenge to the method used by the Secretary in computing wage benefits and the Court upheld the forumla employed by the Secretary which excluded the earnings derived from self-employment as a physician for the period prior to 1965. *See also,* Erickson v. Social Security Board, 149 F. 2d 270 (2d Cir. 1945); Kohr v. Weinberger, 378 F.Supp. 1299 (E.D.Pa. 1974); Polelle v. HEW, 386 F.Supp. 443, (U.S.D.C.N.D.Ill.1974); Aronowitz v. Weinberger, 361 F.Supp. 1159 (S.D. Ohio 1973); McEvoy v. Weinberger, [1973–1974 Transfer Binder] CCH Unemp.Ins.Rep. ¶ 17,414 (U.S.D.C.S.D. Fla.1973).

Thus, we find that, contrary to the claimant's contention, the method used by the Secretary in computing the claimant's disability benefits was in accordance with Section 215 of the Social Security Act as intended by Congress.

 The claimant also contends that even if the Secretary has computed claimant's benefits in accordance with the law and the intent of Congress, § 215 of the Social Security Act is unconstitutional in that: (a) the Act unlawfully discriminates against medical doctors included in Social Security since 1965; and (b) the Act deprives medical doctors of property without due process of law. The claimant's contention is without merit and is rejected.

Our starting point in testing the constitutionality of § 215 of the Social Security Act must be Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). In *Flemming,* the Supreme Court stated:

In judging the permissibility of the cut-off provisions of § 202(n) [of the Social Security Act] from this standpoint, it is not within our authority to determine whether Congressional judgment expressed in that section is sound or equitable, or whether it comports well or ill with the purposes of the Act. "Whether wisdom or unwisdom resides in the scheme of benefits set forth in Title II, it is not for us to say. The answer to such inquiries must come from Congress, not the courts. Our concern here, as often, is with power, not with wisdom." [Helvering v. Davis, 301 U.S. 644, 57 S.Ct. 904, 81 L.Ed. 1307]. Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as this, we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.

The continuing viability of the "rational justification" criteria in the area of economics and social welfare is demonstrated in Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) wherein it is stated:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' . . . 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' . . . 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' " (citations omitted).

*See also*, Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); Harbold v. Richardson, 464 F.2d 1063 (3d Cir. 1972); Kohr v. Weinberger, 378 F.Supp. 1299 (E.D.Pa.1974); Aronowitz v. Weinberger, 361 F.Supp. 1159 (S.D.Ohio, 1973); Furst v. Weinberger, [1973–1974 Transfer Binder] CCH Unemp.Ins.Rep. ¶ 17,291 (U.S.D.C.N.D. Ga.1973). Thus, so long as the goals sought to be accomplished by Congress with respect to the social welfare programs under the Social Security Act are legitimate, and the classifications adopted are rationally related to the achievement of these goals, then the action of Congress is not so arbitrary as to violate the Due Process Clause of the Fifth Amendment. To find a rational basis for the classifications allegedly created by the provisions of the Social Security Act now in question, we need go no further than an analysis of the purposes of the Act and the reasoning of Congress in adopting these provisions.

From its inception the Social Security Act provided only for limited coverage. Since the Act was originally enacted Congress has continually adjusted the level of benefits under the Act and the conditions upon which such benefits may be paid. The Supreme Court has recognized that Congress has great latitude to make classifications in the area of social welfare economics. The Social Security Act in particular was designed to afford protection to working members of the nation's economy. The entire social welfare scheme embodied in the Act rests on the Congressional determination "that those who in their productive years were functioning members of the economy may justly call upon that economy, in their later years, for protection from the 'rigors of the poor house,' Helvering v. Davis, *supra*, 301 U.S. at p. 641, 57 S.Ct. 904, at p. 909. 'But the practical effectuation of that judgment has of necessity called forth a highly complex and interrelated statutory structure. Integrated treatment of the manifold specific problems presented by the Social Security program demands more than a generalization.' Flemming v. Nestor, 363 U.S. 603, 610, 80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435." Harbold v. Richardson, supra, 464 F.2d at 1065–66. The program in Title II of the Social Security Act is financed through a payroll tax levied on employees (including self-employed physicians as of 1965) in covered employment as well as on their employers. In determining the benefits payable Congress has employed a method of computations which makes use of a "average monthly wage" formula. Where an individual has only been in covered employment for a short period of time, the formula determined by Congress has the effect of decreasing the amount payable to a wage earner. Congress well considered the justification of this result from the early beginnings of the Social Security program. The Congressional reports on the 1939 amendments [4] to the Act make it clear that the failure to employ the "average monthly wage" formula would endanger the solvency of the social welfare system established in the Act by permitting overly large benefits to wage earners who have been in covered employment for a relatively short period of time. Clearly, where the funds available under a social welfare program are finite, it is reasonable for Congress to build into the system a safeguard against disproportionately high payments to those who have made the smallest contributions. In approving coverage for self-employment income derived from the practice of medicine, Congress specifically provided that this change "shall only apply with respect to taxable years ending on or after December 31, 1965". Thus, while benefits are weighted somewhat in favor of those who have only been covered by the Act for a short period of time, the Act also insures fiscal integrity by considering the amount of time in cover-

4. H.R.Rep.No.728, 76th Cong., 1st Sess. 10 (1939); S.Rep.No.734, 76th Cong., 1st Sess. 10 (1939).

ed employment in computing benefits. Of particular relevancy is the following passage from Furst v. Weinberger, *supra*:

It is a well-known fact to students of social litigation that the medical profession of this country steadfastly objected to inclusion of their members under the Social Security Act and successfully prevented their coverage until the 1965 amendments. If the formula in controversy here had been devised simply to apply to physicians, plaintiff's contention that it was violative of the due process clause of the Fifth Amendment might very well be sustained. The formula, however, does not address itself simply to physicians, but to all persons who had, because of one exclusion or another, come under coverage of the Act at a date later than its initial inception. It is distinctly advantageous to those who become covered at a late date and contribute only a small amount to the fund. The system also has this built-in protection against complete disproportionate payment by including "benefit computation years" prior to coverage.

We view this as a rational justification for the statutory classification involved and if the classification is rationally justified, then it cannot be found unconstitutional. See Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).

For the reasons discussed above, we hold that in providing the formula under attack in this case for reducing benefits payable to persons, including physicians, who have recently come within the purview of the Act, the Congress has validly exercised its authority in the area of social welfare. The formula utilized by Congress is rationally related to the purposes of the Social Security Act. We, therefore, reject claimant's contention that Section 215 of the Social Security Act is unconstitutional.

Accordingly, the following Order is entered:

## ORDER

And now, to wit, this 27th day of March, 1975, it is ordered that the defendant's Motion for Summary Judgment is granted and judgment is entered in favor of the defendant.